# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

### APPEAL NO. 16-2210

### UNITED STATES OF AMERICA,
#### Appellee,

#### vs.

### ENRIQUE SALDANA,
#### Appellant.

## ON APPEAL FROM THE DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

### BRIEF FOR THE UNITED STATES

**RONALD W. SHARPE**
**UNITED STATES ATTORNEY**

**DAVID WHITE**
**Assistant United States Attorney**
**5500 Veterans Drive, Suite 260**
**St. Thomas, Virgin Islands 00802-6424**
**David.White6@usdoj.gov**
**(340) 774-5757**
**COUNSEL FOR APPELLEE**

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ..........................................................................1

    I.    Subject Matter Jurisdiction...................................................................1

    II.    Appellate Jurisdiction..........................................................................1

STATEMENT OF ISSUES ..................................................................................2

STATEMENT OF THE CASE................................................................................3

    I.    Procedural History................................................................................3

    II.    Statement of Facts ...............................................................................4

STATEMENT OF RELATED CASES ....................................................................9

SUMMARY OF ARGUMENT .............................................................................10

ARGUMENT ....................................................................................................12

    I.    SUFFICIENT EVIDENCE SUPPORTED THE FINDING THAT SALDANA COMMITTED THRID DEGREE ASSAULT. ..............12

    II.    THIRD DEGREE ASSAULT UNDER 14 V.I.C. § 297(a)(4) CONSTITUTES A CRIME OF VIOLENCE UNDER U.S.S.G. § 4B1.2(a)(1). .........................................................................16

    III.    THE DISTRICT COURT DID NOT ERR IN REFUSING TO GRANT A CONTINUANCE TO SALDANA...................................31

    IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REOPENING THE CASE TO HEAR ADDITIONAL EVIDENCE.33

    V.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN QUESTIONING THE WITNESSES....................................37

CONCLUSION ..................................................................................................42

i

CERTIFICATE OF COMPLIANCE.......................................................................43

CERTIFICATE OF SERVICE ...............................................................................44

# TABLE OF AUTHORITIES

## Cases

*Agronofsky v. Pennsylvania Greyhound Lines*,
  258 F.2d 829 (3d Cir. 1957) ......................................................................31

*Castillo v. People*,
  59 V.I. 240 (Sup. Ct. 2013) ................................................................24, 30

*Chrzanoski v. Ashcroft*,
  327 F.3d 188 (2d Cir. 2003) .....................................................................24

*Descamps v. United States*,
  133 S. Ct. 2276 (2013)..............................................................................25

*Government of the V.I. v. Knowles*,
  20 V.I. 94 (D.V.I. 1983) ..............................................................13, 18, 19

*Government of V.I. v. Martinez*
  239 F.3d 293 (3d Cir.2001) .......................................................................12

*Johnson v. United States*,
  135 S. Ct. 2551 (2015)......................................................................*passim*

*Johnson v. United States*,
  559 U.S. 133 (2010)............................................................10, 16, 21, 23

*Maggard v. Wainwright*,
  432 F.2d 941 (5th Cir. 1971) ....................................................................33

*Moore v. United States*,
  598 F.2d 439 (5th Cir. 1970) ..............................................................38, 40

*People v. Lima*,
  No. St-12-CR-086, 2012 WL 5288361 (Sup. Ct. V.I. Oct. 22, 2012) ..........15

*Quercia v. United States*,
  289 U.S. 469 (1933) ..................................................................................38

*Roberts v. Holder*,
    745 F.3d 928 (8th Cir. 2014) ................................................................21, 22

*Taylor v. United States*,
    495 U.S. 575 (1990)......................................................................................17

*Tyson v. People*,
    No. 2011-0009, 2013 WL 4535980 (Sup. Ct. V.I. Aug. 27, 2013)...............15

*Ungar v. Sarafite*,
    376 U.S. 575 (1964)......................................................................................31

*United States v. Adedoyin*,
    360 F.3d 337 (3d Cir. 2004) ...................................................................37, 40

*United States v. Bell*,
    418 F. Appx 115 (3d Cir. Mar. 10, 2011).....................................................36

*United States v. Beaty*,
    722 F.2d 1090 (3d Cir. 1983) ................................................................40, 41

*United States v. Blakenship*,
    775 F.2d 735 (6th Cir. 1985) .......................................................................33

*United States v, Castleman*,
    134 S. Ct. 1405 (2014)..........................................................................*passim*

*United States v. Castro-Vasquez*,
    802 F.3d 28 (1st Cir. 2015)...........................................................23, 24, 25

*United States v. Coward*,
    296 F.3d 176 (3d Cir. 2002) ..................................................................33, 34

*United States v. Dunlap*,
    162 (D. Or. 2016)..................................................................................22, 23

*United States v. Esparza–Perez,*
    681 F.3d 228 (5th Cir.2012) ..................................................................18, 19

*United States v. Gomez,*

908 F.2d 809 (11th Cir. 1990) ....................................................36

*United States v. Gorny*,
   No. 15-2210, 2016 WL 3689063 (3d Cir. July 12, 2016) ...........................22

*United States v. Harris*,
   No. 1:cr-02-0268 (M.D. Pa. Aug. 31, 2016) .................................24

*United States v. Howell*,
   No. 16-10336, 2016 WL 5314661 (5th Cir. Sept. 22, 2016) ...........20, 21, 22

*United States v. Hull,*
   456 F.3d 133 (3d Cir. 2006) ........................................................16

*United States v. Kikumura*,
   947 F.2d 72 (3d Cir. 1991) .......................................................31

*United States v. Kithcart*,
   218 F.3d 213 (3d Cir. 2000) ...................................................34, 35

*United States v. McDaniel*,
   No. 15-CR-20050-01-JAR, 2016 WL 5371859 (D. Kan. Sept. 26, 2016)..22, 23

*United States v. Marrero*,
   743 F.3d 389 (3d Cir. 2014) .......................................................18

*United States v. Molinares*,
   700 F.2d 647 (11th Cir. 1983) ....................................................33

*United States v. Mullins*,
   No. 2:16-119-DCR, 2016 WL 3849816 (E.D. Ky. July 11, 2016).............22, 23

*United States v. Ottaviano*,
   738 F.3d 586 (3d Cir. 2013) .............................................39, 40, 41

*United States v. Parnell*,
   818 F.3d 974 (9th Cir. 2016) ...........................................23, 24, 25

*United States v. Poellnitz*
   372 F.3d 562 (3d Cir. 2004) .......................................................12

v

*United States v. Rosa*,
   399 F.3d 283 (3d Cir. 2005) ...........................................................38

*United States v. Saldana*,
   473 F. App. 118 (3d Cir. Mar. 30, 2012).......................................9

*United States v. Saleen*,
   583 F.3d 1059 (8th Cir. 2009) ......................................................22

*United States v. Schurtner*,
   426 F.2d 470 (3d Cir. 1970) .........................................................34

*United States v. Stirone*,
   311 F.2d 277 (3d Cir. 1969) ....................................................38, 39

*United States v. Thetford*,
   676 F.2d 170 (5th Cir. 1982) ........................................................33

*United States v. Vastola*,
   915 F.2d 865 (3d Cir. 1990) .........................................................33

*United States v. Vespe*,
   868 F.2d 1328 (3d Cir. 1989) ..................................................40, 41

*United States v. Waters*,
   823 F.3d 1062 (7th Cir. 2016) ......................................................24

*United States v. Wilensky*,
   757 F.2d 594 (3d Cir. 1985) .........................................................39

*United States v. Xavier*,
   2 F.3d 1281 (3d Cir. 1993) ...........................................................30

*Voisine v. United States*,
   136 S. Ct. 2272 (2016)............................................................*passim*

*Whyte v. Lunch*,
   807 F.3d 463 (1st Cir. 2015)............................................23, 24, 25

*Woodrup v. People*,
    63 V.I. 969 (Sup. Ct. 2015) ...................................................................24, 30

**Federal Statutes**

18 U.S.C. § 16(a) ....................................................................................................23

18 U.S.C. § 921(a)(33)(A) ...............................................................................*passim*

18 U.S.C. § 922(g)(9)........................................................................................*passim*

18 U.S.C. § 924(e) ..................................................................................................21

18 U.S.C. § 3231 .......................................................................................................1

18 U.S.C. § 3583 ............................................................................................1, 3, 13

28 U.S.C. § 1291 .......................................................................................................1

**Local Statutes**

14 V.I.C. § 297(a)(4)........................................................................................*passim*

16 V.I.C. § 91(b)(1)(2)...........................................................................................30

23 V.I.C. § 451(e) ...................................................................................................30

**Other**

*Blacks Dictionary* ...................................................................................................19

Minn. Stat. § 609.223..............................................................................................21

Tex. Penal Code Ann. §§ 22.01 .............................................................................20

U.S.S.G. § 4B1.2(a)(1)......................................................................................*passim*

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

The district court had subject matter jurisdiction over this revocation of supervised release pursuant to 18 U.S.C. §§ 3231, 3583.

## II. Appellate Jurisdiction

Based on the timely filing of a notice of appeal dated May 2, 2016, from the order of judgment in a criminal case entered on April 22, 2016, this Court has jurisdiction over this final judgment pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Does sufficient evidence support the finding that Appellant Enrique Saldana violated a condition of supervised release by committing third degree assault under Virgin Islands law pursuant to 14 V.I.C. § 297(a)(4)?

2. Does 14 V.I.C. § 297(a)(4) constitute a crime of violence under U.S.S.G. § 4B1.2(a)(1)?

3. Does the district court abuse its discretion in denying a continuance made two days prior to a proceeding?

4. Does the district court abuse its discretion in reopening a case to clarify testimony in a proceeding for revocation of supervised release?

5. Does the district court abuse its discretion in calling and questioning witnesses?

## STATEMENT OF THE CASE

### I. Procedural History

Based on prior federal convictions, Saldana was subject to a three-year term of supervised release pursuant to 18 U.S.C. § 3583(e)(3) that commenced on February 4, 2014. On February 2, 2015, the district court issued a warrant for Saldana's arrest based on the United States Probation Office's filing a revocation petition alleging that Saldana violated the terms of supervised release. App. 20. On April 22, 2016, the district court concluded that Saldana violated a condition of supervised release by committing a territorial offense, namely third degree assault in violation of 14 V.I.C. § 297(a)(4), which constitutes a Grade A violation under U.S.S.G. §7B1.1(a)(1). App. 479. The district court revoked Saldana's supervised release and imposed a term of imprisonment of 18 months, 400 hours of community service, and standard conditions of supervised release pending completion of the 18-month sentence. App. 507-08

## II. Statement of Facts

Convicted of federal crimes and having completed his term of imprisonment, on February 4, 2014, Saldana was released from the Bureau of Prison and commenced a three-year term of federal supervised release. On June 10, 2014, while on supervised release, the Virgin Islands filed an Information charging Saldana with first and second degree murder-domestic violence and first, second, and third degree assault-domestic violence for murdering his wife. App. 19. Based on this Information, the USPO filed a revocation petition, alleging that Saldana violated his conditions of supervised release by violating territory law. App. 20.

The territorial prosecution of Saldana proceeded, so Saldana ultimately sought to continue his federal revocation hearing until the conclusion of the territorial prosecution. App. 18. On April 19, 2016, Saldana moved yet again for a continuance on various grounds, but reiterated that the revocation hearing be postponed until after the territorial prosecution. App. 122. Without ruling on Saldana's most recent motion for a continuance, the district court commenced the revocation hearing on April 21, 2016. App. 131. At that hearing, Saldana again moved for a continuance, citing air traffic delay in his expert's arrival in the Virgin Islands and repeating his wish that the territorial prosecution terminate before the federal revocation. The district court denied the motion, and the revocation hearing commenced. App. 138.

At the revocation hearing, USPO Officer Petty testified that he explained the conditions of supervised release to Saldana and specifically advised Saldana that if he violated local, territorial, or federal law, Saldana's supervised release would be subject to revocation. App. 154-65. Petty obtained the Information and other supporting documentation, which were introduced without objection at the revocation hearing, and these territorial violations formed the basis for the revocation petition. App. 172

Responding to a Virgin Islands Police Department (VIPD) dispatch call, Virgin Islands Police Officer Bernard Burke encountered Saldana driving his "girlfriend" to the hospital. App. 234-35. Saldana requested police escort to the hospital, despite the fact that he drove past numerous places where he could have sought help, include an armory opened and staffed 24 hours daily. App. 234-35. On arriving at the hospital at approximately 7:30 a.m., Burke saw the victim, whom he knew to be Saldana's wife, so he was confused that Saldana referred to her as his "girlfriend." App. 239-40. The victim as "wedged" between the front and back seats of Saldana's vehicle and bruised with "blue, blackish" marks "underneath her throat." App. 240. The victim "wasn't breathing" and "looked like somebody whose circulation had stopped." App. 240. Attempts at resuscitation came to naught, and an emergency room nurse engaged in such attempts advised Burke that the victim

5

was dead. App. 241. VIPD Detective Dwight Griffith corroborated Burke's testimony that the victim was bruised with discoloration on her chest. App. 188, 197.

Robin McGonigle was the emergency room nurse who attended the victim, who, "when she arrived at the emergency room," was "unresponsive, pulseless," and "cold to the touch." App. 252-53, 257. Medical personnel "were unable to detect any cardiac activity" on the victim. App. 253. The victim also suffered "multiple bruising throughout her body . . . all her extremities, her face, her neck, her knees, her back; everywhere; multiple bruises noted." App. 255. When questioned by medical personnel regarding the victim's injuries, Saldana gave inconsistent answers and sometimes no answers. App. 256.

Dr. Francisco Landron, the medical examiner who performed the victim's autopsy, testified that the cause of death was homicide by "acute diphenhydramine intoxication." App. 264, 273. Simply put, the victim was force fed a lethally toxic amount of the narcotic Benadryl, having a concentration of 7900 nanograms per milliliter in her system. App. 270. At such concentrations, the victim would be incapable of moving; she would be "totally sedated and incapacitated," unable to swim or go to the beach. App. 272, 274-75. Landron concluded that the time of the victim's death was between 5:00 a.m. and 6:00 a.m., approximately 2.5 to 1.5 hours before Saldana transported the victim to the hospital. App. 272. The autopsy also revealed that "the most significant finding was there were multiple injuries, multiple

contusions and some abrasions that were distributed all over the body." App. 267. In addition to Landron's testimony, the toxicology reports, autopsy report, other documents were admitted into evidence. App. 267, 268-70, 516-37.

On the evening prior to the victim's death, the victim, her cousin Odette Magras, Corey Isaac, and Saldana were at the victim's home. Saldana introduced a video tape of VIPD Officers interviewing Magras and Isaac regarding the victim's death. App. 221-22, 224. Saldana introduced the tape in an attempt to establish that Magras and Isaac observed no strained relations between Saldana and the victim on the evening in question. App. 221-22.

The parties rested, and the district court stated that it would review the record and render a ruling the next day. That evening, the district court sua sponte entered an order requiring the United States to produce Magras and Isaac for testimony the following day. App. 445. The district court explained that in light of the video tapes Saldana introduced of Magras's and Isaac's interview, the court needed "to clarify testimony, and also to clarify matters in issue in this case." App. 462. Saldana objected to calling these witnesses. App. 446-47.

The district court questioned Magras and Isaac regarding the victim's attire and any visible bruises on the victim. App. 452-54, 458-59. The district court also inquired when Magras and Isaac left the Saldana home and who was there. App. 451. Magras and Isaac stated that when they saw the victim no bruises were present, and

7

only Saldana and the victim's minor daughter were present when Magras and Isaac departed approximately 12:30 a.m. on the morning of the victim's death. App. 451, 453, 459.  On being shown post-mortem exhibits of the victim covered in bruises, Magras and Isaac testified that those bruises were not present when they last saw the victim and Saldana together at approximately 12:30 a.m. App. 454, 460-62. The district court invited the parties to question the witnesses, and Saldana declined. App. 456, 464.

The district court held that Saldana had violated the conditions of supervised release by committing third degree assault in violation of 14 V.I.C. § 297(a)(4). App. 480. The district court explained that based on the timing of events when the victim was only with Saldana, the appearance of the bruises, the testimony of the law enforcement agents, the emergency room nurse, medical examiner, and the documentary evidence, there was more than sufficient evidence to establish by a preponderance that Saldana committed an assault causing serious bodily injury. App. 480-82.

## STATEMENT OF RELATED CASES

This Court affirmed Saldana's judgement and sentence in *United States v. Saldana*, 473 F. App. 118 (3d Cir. Mar. 30, 2012). The United States is not aware of any other related cases.

## SUMMARY OF ARGUMENT

1. Sufficient evidence supports the conclusion that Saldana violated 14 V.I.C. § 297(a)(4). The district court correctly concluded that the United States proved that Saldana committed an assault on the victim and that this assault caused serious bodily harm.

2. Third degree assault under 14 V.I.C. § 297(a)(4) constitutes a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1) because third degree assault has as an element the use, attempted use, or threatened use of force. After *Johnson v. United States*, 559 U.S. 133 (2010), federal courts have concluded that assault statutes like § 297(a)(4) constitute crimes of violence. Furthermore, in *United States v, Castleman*, 134 S. Ct. 1405 (2014), and *Voisine v. United States*, 136 S. Ct. 2272 (2016), the Supreme Court held that domestic assaults like that Saldana committed constitute crimes of violence under 18 U.S.C. § 922(g). Finally, Virgin Islands law categorically classifies § 297(a)(4)—indeed, all degrees of assault—as crimes of violence.

3. The district court did not err in denying the continuance of the revocation hearing until the conclusion of the territorial prosecution of Saldana.

4. The district court did not abuse its discretion in reopening proceedings to admit the testimony of Magras and Isaac to clarify the video clips of their testimony that Saldana introduced. District courts exercise broad discretion in determining to

10

reopen proceedings, and the district court properly exercised that discretion in calling witnesses to clarify videotaped interviews.

5. The district court did not abuse its discretion in ordering that Magras and Isaac be called or in questioning Magras and Isaac to clarify their testimony. The common law and the Federal Rules of Evidence confer on the district court the power to call and question witnesses.

**ARGUMENT**

## I.    SUFFICIENT EVIDENCE SUPPORTED THE FINDING THAT SALDANA COMMITTED THRID DEGREE ASSAULT.

### Standard of Review

Revocation of supervised release is reviewed for an abuse of discretion, s*ee Government of V.I. v. Martinez,* 239 F.3d 293, 297 (3d Cir. 2001), but he factual findings are reviewed for clear error, while legal conclusions warrant plenary review, s*ee United States v. Poellnitz,* 372 F.3d 562, 565–66 & n. 6 (3d Cir. 2004).

### Discussion

Saldana asserts that insufficient evidence supports the district court's conclusion that he committed third degree assault in violation of 14 V.I.C. § 297(a)(4). Both elements of the crime were proved by sufficient evidence.

The district court properly found that Saldana committed third degree assault under 14 V.I.C. § 297(a)(4), which provides "[w]hoever, under circumstances not amounting to an assault in the first or second degree assaults another and inflicts serious bodily injury upon the person assaulted" shall be fined or imprisoned not more than 5 years or both. "Assault" is defined as an "(1) attempt[] to commit a battery; or (2) mak[ing] a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery." 14 V.I.C. § 291. In turn, assault and battery is defined as "any unlawful violence upon the person of another with intent to injure him, whatever be the means or degree of violence used." *Id.* §

12

292. The elements of § 297(a)(4) are: (1) an assault on the victim; and (2) causing serious bodily injury. *See Government of the V.I. v. Knowles*, 20 V.I. 94, 96 (D.V.I. 1983). Assault as used in § 297 incorporates the common law definition of battery. *See id.* The quantum of evidence required to find a violation of supervised released is a preponderance. *See* 18 U.S.C. § 3583(e)(3).

A preponderance of the evidence supports the holding that Saldana violated § 297(a)(4). Saldana was arrested for the victim's homicide, and an Information in the Virgin Islands Superior Court charged Saldana with first and second degree murder-domestic violence, and first, second, and third degree assault-domestic violence. App. 167, 172. Landron testified that the cause of death was homicide. App. 273, 379. The victim was covered with multiple contusions and bruises as a result of blunt force trauma that were consistent with a kick or punch. App. 188, 190, 197, 240, 255, 267-68, 316, 319, 380, 465. Some of the victim's wounds were defensive wounds, App. 478, meaning that the victim fought her attacker. The victim was also force fed a lethal amount of narcotics. The unrebutted evidence proved that the victim was assault and incurred serious bodily injury.

When the victim was last seen alive at approximately 12:30 a.m. on the morning of her death, she had no bruises or contusions. App. 378, 454, 460-64. The victim was "wedged" in Saldana's vehicle between the front and back seats on arrival at the hospital. App. 240. The victim was dead on arrival, cold, with no pulse

13

and no vital signs. App. 240, 253, 257, 379, 477-78. Indeed, on arrival at the hospital, the victim "wasn't breathing," "looked like somebody whose circulation had stopped," was "nonresponsive and pulseless," and medical professionals "were unable to detect any cardiac activity." App. 240, 253. Resuscitation by medical personnel was fruitless because the victim was already dead. App. 241.

A *corpse* is "wedged" between seats in a car; an *animated body* is not—a living person would simply sit in a car. No one was with the victim except Saldana and the victim's minor daughter who was asleep from 12:30 a.m. until the victim died between 5:00 a.m. and 6:00 a.m. on that same morning. App. 185, 272, 378, 465. Despite the time of death as between 5:00 a.m. and 6:00 a.m., Saldana did not take the corpse to the hospital until 7:30 a.m. App. 193, 272, 465. Magras and Isaac place Saldana alone with the victim on the evening and morning of the victim's death. App. 451. That anybody other than Saldana could have assaulted the victim is far-fetched.

The cause of death was a lethal amount of diphenhydramine in the victim's body, and she could not have ingested such a quantum of the narcotic of her own volition. App. 264, 274-75, 379, 381. That amount of narcotic was forced on the victim. App. 382. Furthermore, the victim was not suicidal, but actively making future plans, App. 221, 382, thereby foreclosing any dubious theory Saldana advances that the victim took her own life.

14

In addition to the testimony, medical reports, the autopsy report, and photographs were introduced that established that Saldana was the only person with the victim from 12:30 a.m. until 7:30 a.m., and the victim had no bruises, contusions, or blunt force trauma to her body when last seen alive. Sufficient evidence establishes that Saldana violated §297(a)(4).

Saldana's reliance on *People v. Lima*, No. St-12-CR-086, 2012 WL 5288361 (Sup. Ct. V.I. Oct. 22, 2012), and *Tyson v. People*, No. 2011-0009, 2013 WL 4535980 (Sup. Ct. V.I. Aug. 27, 2013), that insufficient evidence supports the finding that Saldana violated § 297(a)(4) is severely misplaced. The *Lima* court concluded that a video recording of the defendant punching the victim once and the medical examiner's testimony stating that the punch ultimately led to asphyxiation constituted sufficient evidence to sustain a conviction for violation of § 297(a)(4). *Lima* supports the United States' position that sufficient evidence is present here. In *Tyson* there was a complete absence of evidence to prove assault with a deadly weapon. The *Tyson* court explained that a single witness who could not even see the defendant, did not see the defendant discharge the firearm, and heard no gunfire from the defendant's locale did not prove assault with a deadly weapon. Such an absence of evidence is not remotely the case here.

## II.    THIRD DEGREE ASSAULT UNDER 14 V.I.C. § 297(a)(4) CONSTITUTES A CRIME OF VIOLENCE UNDER U.S.S.G. § 4B1.2(a)(1).

### Standard of Review

This Court freely reviews the conclusion that a crime is a crime of violence. *See United States v. Hull,* 456 F.3d 133, 137 (3d Cir. 2006).

### Discussion

Saldana asserts that his conviction for third degree assault under 14 V.I.C. § 297(a)(4) does not constitute a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1) because § 297(a)(4) does not require the use, attempted use, or threatened use of force to sustain a conviction. Relying on *Johnson v. United* States, 559 U.S. 133 (2010), Saldana argues that the force needed to constitute a crime of violence pursuant to U.S.S.G. § 4B1.2(a)(1) is violent force, and a conviction under § 297(a)(4) can be proved without resort to violent force. In so arguing, Saldana likens his assault conviction to third degree robbery statutes in which the courts ruled that robberies are not crimes of violence.

Saldana's argument fails for numerous reasons. First, a conviction under § 297(a)(4) qualifies as a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1) because the requisite use, attempted use, or threatened use of force is present. Second, several courts have concluded that third degree assault statutes similar to § 297(a)(4) constitute crimes of violence, and in this connection, Saldana's

16

analogizing his assault to third degree robberies is an imperfect comparison. Third, *United States v. Castleman*, 134 S. Ct. 1405 (2014), and *Voisine v. United States*, 136 S. Ct. 2272 (2016), fortify the conclusion that § 297(a)(4) is a crime of violence. Finally, Virgin Islands law declares assault to be a crime of violence.

    **A.**    **Under the categorical approach of *Taylor v. United States*, 495 U.S. 575 (1990), a conviction under § 297(a)(4) qualifies as a crime of violence because such a conviction requires the use, attempted use, or threatened use of violent force.**

The district court concluded that Saldana violated 14 V.I.C. § 297(a)(4), which provides that "[w]hoever under any circumstances not amounting to an assault in the first or second degree assaults another and inflicts serious bodily injury upon the person assaulted shall be . . . imprisoned not more than 5 years." "Assault" is defined as an "(1) attempt[] to commit a battery; or (2) mak[ing] a threatening gesture showing in itself an immediate intention coupled with an ability to commit a battery." 14 V.I.C. § 291. Crime of violence under U.S.S.G. § 4B1.2(a)(1), "means any offense under federal or state law punishable by imprisonment for a term exceeding one year, that—has as an element the use, attempted use, or threatened use of physical force against the person of another;"

In *Taylor v. United States*, 495 U.S. 575, 600-02 (1990), the Supreme Court devised a categorical framework to determine if a predicate crime qualifies as a

17

crime of violence for purposes of the federal statute at issue.[1] This framework directs courts to compare the elements of the predicate offense, § 297(a)(4), with the elements of the generic federal offense of assault. Pursuant to this framework, if § 297(a)(4) has the same elements as the generic crime as defined in U.S.S.G. § 4B1.2(a)(1), then § 297(a)(4) serves as a predicate offense. If the elements of § 297(a)(4) encompass greater conduct than the federal generic elements, then § 297(a)(4) does not constitute categorically a crime of violence.

The elements of § 297(a)(4) are: (1) an assault on the victim; and (2) causing serious bodily injury. *See Knowles*, 20 V.I. at 96. Assault as used in § 297 incorporates the common law definition of battery. *See id.* Indeed, most states incorporated in their codifications of assault and battery statutes the common law definition of assault and battery as reflected in the Model Penal Code. *See Voisine*, 136 S. Ct. at 2280 (recognizing that the vast majority of state assault and battery statutes use the common law/Model Penal Code definition of these terms). Most courts consult the common law, treatises, dictionaries, and the Model Penal Code to determine the generic elements of a federal crime. *See United States v. Marrero*, 743 F.3d 389, 399 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 950 (2015); *United States v.*

---

[1] In the supervised release context, the modified categorical approach of *Shepard v. United States*, 544 U.S. 13 (2005), applies. *See United States v. Carter*, 730 F.3d 187, 192 (3d Cir. 2013). Because the district court expressly found that Saldana violated § 297(a)(4), there is no need to resort to the modified categorical approach.

*Esparza–Perez*, 681 F.3d 228, 229–30 (5th Cir.2012). Amalgamating the definitions in these authorities, the generic elements of assault under federal law are: (1) an attempt or assault or battery and (2) that attempts or causes bodily injury. *See Voisine*, 136 S. Ct. at 2280 (analyzing common law assault and battery statutes and the Model Penal Code to define crime of violence in a federal statute); *Esparza-*Perez, 689 F.3d at 231 (consulting various authorities to define federal generic assault); *BLACKS LAW DICTIONARY* 109 (West 7th ed. 1999) (defining several types of assault); M.P.C. § 211.1 (defining simple and aggravated assault). Both § 297(a)(4) and generic federal assault require the same elements, namely an assault that results in bodily injury. Concluding that third degree assault under § 297(a)(4) is identical to the generic federal offense of assault, the *Knowles* court explained that the definition of assault in § 297 incorporated the common law definition of assault and battery, and by this incorporation, third degree assault possessed the same elements of assault as used in the Model Penal Code. *See Knowles*, 20 V.I. at 96-97 & n.1. Because the elements of § 297(a)(4) and the generic elements of federal assault are the same, § 297(a)(4) categorically qualifies as a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1).

### B. Case law establishes that third degree assault statutes like § 297(a)(4) qualify as crimes of violence.

Case law determining if state third degree assault statutes constitute crimes of violence under federal statutes demonstrates that assault is a crime of violence. For

instance, in *United States v. Howell*, No. 16-10336, 2016 WL 5314661, \*10 (5th Cir. Sept. 22, 2016), the Fifth Circuit analyzed the Texas assault statute classifying as a third degree felony "intentionally, knowingly, or recklessly caus[ing] bodily injury to another, including the person's spouse" or "intentionally, knowingly, or recklessly impeding the normal breathing . . . by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." Tex. Penal Code Ann. §§ 22.01 (a)(1), (b)(2). The *Howell* court first concluded that the categorical approach applied, and this approach dictated that a reckless mens rea "may qualify as an offense that 'has an element the use, attempted use, or threatened use of physical force against the person of another' within the meaning of § 4B1.2(a)(1) of the Guidelines." *Howell*, 2016 WL 5314661, at \*9. In so concluding, the court extrapolated from *United States v. Castleman*, 134 S. Ct. 1405 (2014), to reject the defendant's contention that the Texas assault statute lacked the use of physical force because conviction could be accomplished merely by recklessness. *See id.* at \*8-\*9. The use element satisfied, the court reasoned that the least culpable offense under the statute would require recklessly causing impediment to normal breathing; to apply pressure to accomplish such an impediment would necessarily "involve the use of physical force." *Id.* at \*10. Holding otherwise would prove 'difficult to conceive." *Id.* Accordingly, the Texas assault statute categorically constituted a crime of violence under § 4B1.2(a)(1).

One of the more salient observations the court made was in rejecting the innumerable hypotheses Howell advanced in an attempt to remove himself from the assault statute's embrace. Howell contended that force could be accomplished in innocuous manners, such as a plastic bag over the victim's mouth, debris from yardwork the defendant was performing that made its way to the victim's face, or the victim's scarf or necktie becoming entangled by an implement the defendant was holding. *See id.* According to Howell, such examples failed to constitute the violent force necessary to trigger application of the force clause of the Armed Career Criminal Act of 18 U.S.C. § 924(e) as the identical language was construed *Johnson v. United States*, 135 S. Ct. 2551 (2015). Engaging in such hypothetical scenarios was irrelevant because the operative language of the Texas assault statute was "blocking," or "applying pressure," not the manner of impeding breathing. The act of blocking breath or applying pressure, not the mode of impediment, was the material consideration in determining if force was employed. Under the statute, the affirmative act of blocking or applying furnished the necessary force to trigger a crime of violence under U.S.S.G. § 4B1.2(a)(1).

Equally well reasoned is *Roberts v. Holder*, 745 F.3d 928 (8th Cir. 2014). Third degree assault under Minnesota law requires proof of two elements: "(1) an 'assault' of another, (2) that inflicts 'substantial bodily harm.'" *Roberts*, 745 F.3d at 931 (quoting Minn. Stat. § 609.223). Robert was convicted under this third degree

21

assault statute, but he maintained on appeal that this conviction was not a crime of violence that would result in his removal under 18 U.S.C. § 16(a), which is construed identically to U.S.S.G. § 4B1.2(a)(1). *See id.* 930-31. The Court of Appeals reasoned that because the statute required substantial bodily harm, the statute necessarily entails "'the intentional use of physical force against another.'" *Id.* at 931 (quoting *United States v. Saleen*, 583 F.3d 1059, 1060 (8th Cir. 2009)). Because the statutory language necessarily implicated use of force, third degree assault "is therefore categorically a 'crime of violence' under 18 U.S.C. § 16(a)." *Id.*[2]

Applying these cases compels the conclusion that § 297(a)(4) qualifies as a crime of violence under U.S.S.G. § 4B1.2(a)(1). As in *Howell*, to inflict serious bodily injury by committing an assault necessarily entails the use of physical force. The elements of Minnesota third degree assault and § 297(a)(4) are identical, save

---

[2] Other courts accord. *See, e.g.*, *United States v. McDaniel*, No. 15-CR-20050-01-JAR, 2016 WL 5371859, *4-*5 (D. Kan. Sept. 26, 2016) (holding that a Kansas aggravated assault with a deadly weapon was a crime of violence under U.S.S.G. § 41B.2(a)(1)); *United States v. Mullins*, No. 2:16-119-DCR, 2016 WL 3849816, *2 (E.D. Ky. July 11, 2016) (holding post-*Johnson* that third degree assault under Kentucky law defined as acting "recklessly, with a deadly weapon or dangerous instrument, or intentionally caus[ing] or attempt[ing] to cause physical injury" categorically qualified as a crime of violence under U.S.S.G. § 4B1.2(a)(1)); *United States v. Dunlap*, 162 F. Supp. 3d 1106, 1116-19 (D. Or. 2016) (holding post-*Johnson* that Oregon third degree assault defined as "intentionally or knowingly caus[ing] physical injury to another" constitutes a crime of violence for purposes U.S.S.G. § 4B1.2(a)(1)); *see also United States v. Gorny*, No. 15-2210, 2016 WL 3689063, *4 (3d Cir. July 12, 2016) (holding no plain to conclude that Pennsylvania aggravated assault statute requiring bodily injury "necessarily requires the use of force capable of causing bodily injury—that is, 'violent force.'").

the former requires "substantial" injury while the latter requires "serious" injury. As the Eighth Circuit elucidated, causing substantial bodily harm by definition requires the use of physical force. *McDaniel*, *Mullins*, and *Dunlap* are to the same effect and all hold that *Johnson*'s use of "violent force" does not alter those conclusions. Coming within the parameters of these cases, § 297(a)(4) is a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1).

Saldana's reliance on *Whyte v. Lunch*, 807 F.3d 463 (1st Cir. 2015), *United States v. Parnell*, 818 F.3d 974 (9th Cir. 2016), and *United States v. Castro-Vasquez*, 802 F.3d 28 (1st Cir. 2015), is misplaced because all are distinguishable. At issue in *Whyte* was if Connecticut's third degree assault statute constituted a crime of violence under 18 U.S.C. § 16(a). In resolving this issue, the United States conceded that physical force meant violent force as construed in *Johnson*. *See Whyte*, 807 F.3d at 468. The Connecticut statute required two elements for proof of conviction: (1) intent to cause physical injury to another person; and (2) causing injury to that person or a third person. *See* C.G.S.A. § 53a-73(a). According to the court, this statute did not qualify as a crime of violence because there was no element of the use, threatened use, or attempted use of violent force, but rather only the two elements of physical injury and causation. *See Whyte*, 807 F.3d at 468. Because this element was lacking, the statute could not constitute a crime of violence. In so ruling, the court noted that no Connecticut courts held that use was an element of the crime; moreover, the court

23

ruled that despite the fact that the defendant offered no authority that third degree assault can be accomplished absent violent force was of no moment. *See id.* at 469.

*Whyte* differs markedly from the instant appeal. Unlike the Connecticut courts, the Virgin Islands courts have emphatically held that third assault degree is a crime of violence. *See Woodrup v. People*, 63 V.I. 969, 706 (Sup. Ct. 2015); *Castillo v. People*, 59 V.I. 240, 272 (Sup. Ct. 2013). Thus, the Connecticut and Virgin Islands courts part company on the issue of third degree assault's constituting a crime of violence, and this departure renders *Whyte* inapposite.

*Whyte* is also difficult to square with *Castleman*. Although *Whyte* discussed *Castleman*, the *Whyte* court summarily held that it declined to disagree with the Second Circuit's holding in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), that the Connecticut third degree assault statute is not a crime of violence for immigration law purposes. In *United States v. Waters*, 823 F.3d 1062, 1065 (7th Cir. 2016), the Seventh Circuit cited *Whyte* as an anomaly that stood with only a discredited Fourth Circuit case both of where were undermined by *Castleman*. *See also United States v. Harris*, No. 1:cr-02-0268, 2016 WL 4539182, *5-*6 (M.D. Pa. Aug. 31, 2016) (noting that many circuits had rejected the rule of *Whyte*). *Whyte* is not persuasive authority for Saldana's position.

*Parnell* and *Castro-Vazquez* fare no better.  In *Parnell*, robbery, not assault, was at issue, but more fundamentally different, *Parnell* addressed force under §

924(e), which *Johnson* had already concluded required violent force. *Any* force satisfied the Massachusetts robbery statute at issue, and any force is not violent force under *Johnson*. *Parnell* presents a foregone conclusion of a robbery statute—hardly apropos to the instant appeal. *Castro-Vasquez* is even less persuasive because at issue there was a Puerto Rico robbery statute, and the case was remanded in light of the intervening and newly decided *Descamps v. United States*, 133 S. Ct. 2276 (2013). In light of remand to address an issue the district court did not address, *Castro-Vasquez* holds nothing relevant here. These cases addressing robbery statutes simply have no applicability to assault under Virgin Islands law.

C.    ***United States v. Castleman*, 134 S. Ct. 1405 (2014), fortifies the conclusion that § 297(a)(4) constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(1).**

Conspicuously absent from Saldana's brief are *United States v. Castleman*, 134 S. Ct. 1405 (2014), and *Voisine v. United States*, 136 S. Ct. 2272 (2016), both of which fortify the conclusion that Saldana's assault of the victim constitutes a crime of violence under U.S.S.G. § 4B1.2(a)(1). Castleman was convicted of a Tennessee domestic assault statute providing for criminal liability to one who "'intentionally or knowingly causes bodily injury' to the mother of his child." *Castleman*, 134 S. Ct. at 1409 (quoting Tenn. Code Ann. § 39-13-111(b)). Thereafter, Castleman was indicted for unlawfully trafficking in firearms in violation of 18 U.S.C. § 922(g)(9), which generally prohibits those convicted of a

misdemeanor crime of domestic violence from possessing firearms. *See id.*

Subsection 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as:

> an offense that . . . . has, as an element, the use or attempted
> use of physical force, or the threatened use of physical
> force . . . by a current or former spouse . . . by a person
> with whom the victim shares a child in common, or has
> cohabitated with the victim as a spouse . . . .

Glossing § 921(a)(33)(A) with *Johnson*'s holding that force is "violent force" under § 922(e), the district court held that § 921(a)(33)(A) requires violent contact with the victim and dismissed the § 922(g)(9) charges because the Tennessee statute did not qualify as a misdemeanor crime of domestic violence. According to the district court, the Tennessee statute failed to qualify because violation could be accomplished without violent contact, such as by inducing the victim to consume poison. *See id.* at 1410. Applying *Johnson*'s definition of "violent felony," a divided panel of the Sixth Circuit affirmed, holding that "violent force" was necessary to trigger application of § 921(a)(33)(A). *See id.*

The Supreme Court reversed, reasoning that the force contemplated by § 921(a)(33)(A) was not violent force, but rather common law force, meaning the force of a common law battery. *Castleman* addressed several considerations relevant to resolving the instant appeal in holding that violent force was not required to sustain a conviction of a misdemeanor crime of violence. First, the Court observed that domestic violence assaults were typically prosecuted under assault and battery laws,

26

and because such laws served as the statutes of convictions, common law battery force "fit[] perfectly" for the force necessary to commit a crime of violence under § 921(a)(33)(A). *Id.* at 1410-11. Quintessential use of the statutes of conviction and the congressional history of legislating against the exposition of common law counseled that common law battery force, not violent force as in § 924(e), satisfied the quantum of proof in domestic assault statutes.

Second, central to the Court's analysis was defining "physical force" against the exposition of common law assault and battery. *See id.* at 1412. At common law, "'[p]hysical force' has a presumptive common-law meaning,' and applying that common law meaning "makes sense in defining a misdemeanor crime of domestic violence.'" *Id.* The common law meaning was particularly apropos given that violence between cohabitants is historically incrementally repetitious, and with the elapse of time, minor assaults can blossom into more aggressive assaults. *See id.*

A third reason disfavoring application of the violent force in *Johnson* were the collateral consequences of § 924(e) and § 922(g)(9). The penalties under § 924(e) were far stiffer because they branded the violator an "armed career criminal," with multiple concomitant restrictions and penalties. *Id.* Conversely as applied to assault statutes, § 921(a)(33)(A) simply prohibited a violator from possessing a firearm. *See id.* Because the purpose of assault statutes is to prevent assault, not impose severity in other respects, a lesser quantum of force satisfies that goal; thus, *Johnson*'s use of

"violent force" fits poorly with assault. These considerations counseled that "'physical force' is satisfied, for purposes of § 922(g)(9), by the degree of force that supports a common-law battery conviction." *Id.* at 1413.

Applying common law battery's use of physical force compelled the conclusion that Castleman's violation of the Tennessee statute constituted a "misdemeanor crime of domestic violence." *Id.* Castleman was convicted of knowingly or intentionally causing bodily injury, "and the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Id.* 1415. The Tennessee statute required bodily injury, and common law force is "'force exerted by and through concrete bodies,' And the common-law concept of 'force' encompasses even its indirect application." *Id.* (quoting *Johnson*, 559 U.S. at 138). Because common law batteries can be accomplished by intangible means, "[i]t is impossible to cause bodily injury without applying force in the common-law sense." *Id.* at 1415.

The Court swiftly dispatched Castleman's contention that a victim could be lulled into consuming poison and such conduct lacks any force. Knowing or intentional application of force constitutes a "use" of force at common law. "Use" means to employ or capitalize on a tool, and the use of force to accomplish indirect means is the act of employing that instrument or object to achieve a goal. As specifically applied to poison or other intangible means, "the act of employing a

28

poison knowingly as a device to cause physical harm," is the use of force, not the act of lacing the item to be consumed. *Id.* Causation, therefore, is relevant to defining "use," not the actual physical act of using the tool.

Expounding on *Castleman*, in *Voisine v. United States*, 136 S. Ct. 2272, 2280 (2016), the Court concluded that even reckless domestic assaults qualify as "misdemeanor crimes of domestic violence" for purposes of § 922(g)(9). In so concluding, *Voisine* explained that "[n]othing in the word use . . . indicates that § 922(g)(9) applies exclusively to knowing or intentional domestic assaults." *Voisine*, 136 S. Ct. at 2278. While "use" connotes volitional conduct, "use" "does not demand that the person applying force have the purpose or practical certainty that it will cause harm" *Id.* at 279. In this respect, use does not differentiate between varying culpable mental states in relation to the consequences of voluntary conduct. Thus, one "who assaults another recklessly 'use[s]' force no less than one who carries out that same action knowingly or intentionally." *Id.* at 2280. The use of physical force in § 921(a)(33)(A) embraces reckless force as contemplated by common law assault.

*Castleman* and *Voisine* bolster the conclusion that § 297(a)(4) qualifies as a crime of violence. Third degree assault in the Virgin Islands employs the same elements of common law assault, which requires the force necessary for battery. Here, the necessary force must result in serious bodily injury, and the quantum of force necessary to incur that type of injury satisfies the crime of violence definition

in U.S.S.G. § 4B1.2(a)(1). Saldana assaulted the victim, inflicting multiple bruises and forcing a lethal quantity of narcotics in the victim. As in *Castleman*, to hold that this bodily injury is not force constituting a crime of violence is absurd. Also relevant here is that Saldana assaulted his wife, which is domestic violence. Indeed, the indictment for the assault charge under § 297(a)(4) was also charged under the domestic violence statute, 16 V.I.C. § 91(b)(1)(2). The crime that Saldana committed comes perfectly within the ambit of "crime of violence" contemplated by *Castleman* and *Voisine*.

> **D.    The Virgin Islands has concluded that third degree assault constitutes a crime of violence.**

Finally, the Virgin Islands legislature found that third degree assault should be and is a crime of violence and declared the crime as such by statute in 23 V.I.C. § 451(e). Adhering to this legislative dictate, the Virgin Islands courts have concluded that third degree assault constitutes a crime of violence. *See Woodrup*, 63 V.I. at 706; *Castillo*, 59 V.I. at 272. This Court has also observed that Virgin Islands third degree assault qualifies as a crime of violence. *See United States v. Xavier*, 2 F.3d 1281, 1289 n.7 (3d Cir. 1993).

## III.   THE DISTRICT COURT DID NOT ERR IN REFUSING TO GRANT A CONTINUANCE TO SALDANA.

### Standard of Review

This Court reviews a denial of a continuance for an abuse of discretion. *See United States v. Kikumura*, 947 F.2d 72, 87 (3d Cir. 1991).

### Discussion

Saldana's challenge regarding the continuance is that the hearing was not postponed a sufficient amount of time to permit his expert to hear all of the testimony of Landron regarding cause of death. This argument fails for numerous reasons: The district court did postpone the hearing by an hour to accommodate the arrival of Saldana's expert and required the United States to have its expert testify last to accommodate Saldana. Additionally, prompting Saldana's request was receipt of a police report that allegedly suggested that Landron may have acquired some information from an unspecified source when meeting the territorial prosecutor regarding this case. App. 142-43. The fatal vagueness of this assertion aside, as the district court correctly explained, Landron did not use this information in preparing his autopsy report. App. 145-46. Accordingly, denial of postponement on that basis is not error. *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (holding that denial of a continuance constitutes an abuse of discretion only if the denial is "so arbitrary as to violate due process"). Moreover, a district court does not err in refusing a continuance on the eve of a proceeding. *See Agronofsky v. Pennsylvania Greyhound*

31

*Lines*, 258 F.2d 829, 830 (3d Cir. 1957) (per curiam).  This position is all the less forceful because Saldana admitted that he interviewed Landron and could have explored Landron's knowledge at that interview. App. 142. Finally, regarding the allegedly late 118 pages of additional discovery, those were produced Monday, and the hearing was Thursday, so Saldana's expert had a minimum of three days to review them, and some of them were apparently pictures. App. 140-41. The item of interest in these pages was the referenced police report, which, as explained, was of no moment. There is no abuse of discretion here.

## IV.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REOPENING THE CASE TO HEAR ADDITIONAL EVIDENCE.

### Standard of Review

This Court reviews the reopening of a proceeding for an abuse of discretion. *See United States v. Vastola*, 915 F.2d 865, 876 (3d Cir. 1990).

### Discussion

Saldana contends that the district court erred in reopening the proceedings to permit Magras and Isaac to testify. Here, Saldana submitted video clips of Magras's and Isaac's interviews by the VIPD relating to the victim's death. Based on the video clips, the district court determined that their testimony required clarification that could only be resolved by having Magras and Isaac testify. Consequently, after the parties rested, the district court sua sponte issued an order directing the United States to produce Magras and Isaac to testify the next day.

District courts exercise "[c]onsiderable latitude" in reopening proceedings to accept additional evidence. *United States v. Molinares*, 700 F.2d 647, 652 (11th Cir. 1983) (quoting *Maggard v. Wainwright*, 432 F.2d 941. 944 (5th Cir. 1971) (per curiam)). In this respect, Saldana's discussion of *United States v. Coward*, 296 F.3d 176 (3d Cir. 2002), and *United States v. Blakenship*, 775 F.2d 735 (6th Cir. 1985), quoting *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir.1982), is rather irrelevant because those cases address factors that a *defendant* must establish to prove that a district court abused its discretion *in denying a motion to reopen*. Such

33

is not the case here because the district court sua sponte reopened proceedings based on information that emerged at the hearing from Saldana's own evidence. The United States was not the movant, so the United States has no burden because it did not seek to reopen. That aside, even if the United States inadvertently neglected this testimony, inadvertence suffices to reopen. *See United States v. Schurtner*, 426 F.2d 470, 474-75 (3d Cir. 1970) (affirming the reopening of evidence after the case was closed so that the United States could offer a new witness to prove an element of the offense, namely that a bank was federally insured).

Saldana has also failed to show the requisite prejudice. *See Coward*, 296 F.3d at 181. In fact, he makes no such attempt, but merely recites in a single sentence that reopening was "prejudicial." (Appellant's Br. at 45). Relevant evidence is always prejudicial. Saldana's position is all the more specious because the evidence was reopened merely to clarify evidence that Saldana submitted. For Saldana to object based on the incomplete evidence he submitted is preposterous. Saldana was hoisted by his own petard, and he may not now mischaracterize his trial gambit as error and impute that error to the district court.

Saldana's reliance on *United States v. Kithcart*, 218 F.3d 213, 220 (3d Cir. 2000) (*Kithcart II*), is likewise unavailing because it is legally and factually distinguishable. In *Kithcart II*, this Court reversed and remanded the district court's denial of a suppression motion on the specified grounds that the district court

34

consider the "grounds for the stop" and the justification for "the events leading to the discovery of the weapon" on the defendant's person. Exceeding the scope of this Court's express remand, the district court permitted the United States to reopen the case *after* remand to present additional evidence absent any explanation from either the United States or the district court. *See Kithcart II*, 213 F.3d at 220-21. This Court ruled that the district court impermissibly protracted the scope of the remand order as well as erred in permitting reopening without any rationale. *See id.* at 221-22.

*Kathcart II* is wholly distinguishable. The procedural posture of *Kathcart II* and the present case dispositively differ: In the former, the appellate court had already reversed the district court's order and instructed the district court to consider two specific issues on remand after appeal. In the latter by contrast, there is no reversal and remand. Equally different, the *Kathcart II* district court exceeded the scope of the remand order, while no such remand order controls in Saldana's case.

The two cases also differ in that troubling to the *Kathcart II* court was the absence of any explanation for reopening. According to the district court—the movant—Saldana's video clips of Magras and Isaac prompted questions that the district court needed answered. App. 447. Saldana's protestations that there was no explanation for reopening and the United States failed to supply a reason ring hollow. (Appellant's Br. at 44). The United States was not the movant, and it had no obligation to furnish a reason to reopen, but the district court supplied the reason.

35

This appeal is far more akin to *United States v. Bell*, 418 F. Appx 115 (3d Cir. Mar. 10, 2011). In *Bell*, after the close of Bell's case-in-chief, the United States moved to reopen to call a law enforcement officer who had previously testified. *See Bell*, 418 F. Appx at 116. The United States offered as its rationale to reopen to rebut that prior testimony. *See id.* at 117. Asserting that reopening prejudiced him because he had rested, Bell posited that the district court erred in granting the United States' motion to reopen. *See id.* at 118. Eschewing Bell's assertion, this Court observed that reopening was not improper because offering rebuttal evidence was permissible, even if the offer "clearly injured [Bell's] defense" to some degree. *Id.*

As in *Bell*, Saldana's evidence animated reopening: the district court sought to clarify testimony, and admission of evidence for such purposes constitutes a valid ground to reopen. *See United States v. Gomez*, 908 F.2d 809, 810 (11th Cir. 1990) (holding that the district court did not abuse its discretion in granting the United States' motion to reopen the evidence at trial in order to rebut the defendant's entrapment claim). The district court did not abuse its discretion in sua sponte calling and questioning Magras and Isaac.

## V.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN QUESTIONING THE WITNESSES.

### Standard of Review

Forfeited objections are reviewed for plain error, *see United States v. Rosa*, 399 F.3d 283, 290-91 (3d Cir. 2005), but a district court's questioning witnesses is reviewed for an abuse of discretion, *see United States v. Adedoyin*, 360 F.3d 337, 342-43 (3d Cir. 2004).

### Discussion

Saldana complains that the district court improperly ordered the United States Attorney's Office to call Magras and Isaac so that the district court could question them. According to Saldana, the district court ceased serving as an impartial arbiter and transformed into a prosecutor by such conduct. Because Saldana objected to the testimony of Magras and Isaac, this Court's reviews the district judge's questioning for abuse of discretion. Because Saldana forfeited the claim that the court abjured judicial impartiality for prosecutorial advocacy by failing to raise it in district court, that claim is reviewed for plain error. The district court acted within its discretion in this particular instance in calling and questioning Magras and Isaac. The district court called these witnesses simply "to clarify testimony, and also to clarify matters in issue in this case." App. 462.

Federal Rule of Evidence 614(a) provides that "[t]he court may call a witness on its own or at a party's request." The district judge, therefore, has the express right

to call witnesses. Although the Federal Rules of Evidence do not apply to revocation of supervised release hearings, if the district judge can call a party at a criminal trial, he can surely call one for the lesser standard of proof and more informal proceeding of supervised release. Saldana's contention that the district court erred in calling Magras and Isaacs fails.

Saldana's principle quarrel is that the district judge abandoned neutrality and transformed into a prosecutor by his questioning of Magras and Isaac. A district judge is not relegated to a passive, tacit observer of litigation. *See Quercia v. United States*, 289 U.S. 466, 469 (1933). The district judge "is a common law judge having that authority historically exercised by judges in the common law process. He may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those previously presented, and may maintain the pace of the trial by interrupting and cutting off counsel as a matter of discretion." *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1970) (citations omitted). Specifically, as applied to questioning witnesses, this Court has opined that the district judge has "the right and duty . . . to act in the *interrogation* of witnesses to the end that the truth emerge and be reflected in the judgment." *United States v. Stirone*, 311 F.2d 277, 279 (3d Cir. 1969) (emphasis added). This duty requires that a district judge "should interrogate witnesses to help render understandable such matters." *Id.* Indeed, "the paramount consideration is whether the judge has seen to it that all admissible

evidence helpful to an intelligent understanding of the issues is before the jury to aid in it in its deliberations.' *Id.* at 280.

Balanced against the district judge's participation in a trial is that his questioning witnesses not wax to overzealousness such that his impartiality is compromised. *See United States v. Ottaviano*, 738 F.3d 586, 595 (3d Cir. 2013). The district judge must not abjure impartiality for advocacy. To determine if the district judge so transgressed, this Court considers a variety of criteria "to determine whether the trial judge's comments have pervaded the overall fairness of the proceeding." *United States v. Wilensky*, 757 F.2d 594, 598 (3d Cir. 1985). In the criminal trial context, those criteria include: the portion of the trial affected by the challenged conduct, the jury's presence for the challenged conduct, equitable treatment of the adversaries, the issuance of curative instructions, the extent of the manifestation of bias, and the evidence of a defendant's guilt. *See Ottaviano*, 738 F.3d at 596.

Evaluating these criteria establishes that the district court did not err in questioning Magras or Isaacs. Federal Rule of Evidence 614(b) furnishes authority for the district judge to question witnesses by providing that "[t]he court may examine a witness regardless of who calls the witness." In this vein, *Stirone* concluded that *interrogating* witnesses to elicit the truth was incumbent on the district judge, and clearly the district judge's clarifying testimony did not rise to the level of interrogation. Posing such questions to witnesses is perfectly permissible.

*See Adedoyin*, 369 F.3d at 343 (holding that the district judge's asking probing questions of defendant and his witnesses was permissible); *Moore*, 598 F.2d at 442 (holding that the district court's "independent examination" of the defendant that consisted of 105 questions regarding the defendant's activities on the day of the criminal conduct did not transgress the bounds of impartiality). Here, the district court sought to clarify testimony, which is a perfectly legitimate reason to call witnesses. *See Moore*, 598 F.2d at 442. *Moore* also expressly recognized that district judge are charged with "elicit[ing] facts not yet adduced" as part of their obligations. *Id.* The district court's conduct here simply did not rise to level of abandoning neutrality. *See, e.g.*, *Ottaviano*, 738 F.3d at 596 (holding that impartiality was relinquished by the chronic interruptions, denigration, overt contempt, and "barrage" of questions and comments from the district judge); *United States v. Beaty*, 722 F.2d 1090, 1096 (3d Cir. 1983) (stating that a district judge's intrusive "lengthy cross-examination" of a key defense witness and general "overzealous" conduct compromised judicial neutrality).

Here, the questioning was brief and affected only a small portion of the revocation hearing and as such, had little impact. The district court assuredly exhibited evenhanded treatment of the parties:  both parties were invited to question Magras and Isaac.  Additionally, the district court treated both parties in the same manner, not favoring one over the other. *See United States v. Vespe*, 868 F.2d 1328,

1340-41 (3d Cir. 1989) (noting that the district court's questioning witnesses revealed no predisposition to believe any party's witness over that of the opposing party). In a related vein, there was no manifestation of bias; the district court did not demonstrate contempt for Saldana, nor denigrate him nor his witness. *See Ottaviano*, 738 F.3d at 595 (recognizing that the district judge's indignation and "barrage" of questions and comments revealed bias). Finally, there was sufficient evidence of guilt that Saldana omitted a third degree assault even without the testimony of Magras and Isaacs.

Perhaps most injurious to Saldana's claim is that the precepts on which he relies for reversal based on the abandonment of judicial impartiality is that in all such cases, there was a trial to a *jury*. Here, no such consideration applies; this was a revocation hearing before a district judge; there was no jury. These principles ebb greatly with no jury present. *See Ottaviano*, 738 F.3d at 595 (noting that the fear of judicial bias springs from the fact that a jury is presumably greatly influenced by the conduct and attitude of the district judge, so the district judge must remain neutral); *Beaty*, 722 F.2d at 1093 (stating because of the import the jury places on the conduct of the district judge, the judge cannot demonstrate bias in front of the jury). In a proceeding without a jury, Saldana's weak claim is all the weaker.

## CONCLUSION

The United States requests that the judgment be affirmed.

Respectfully submitted,

RONALD W. SHARPE
United States Attorney

Dated: November 3, 2016          By:     */s/* David White

David White
Assistant United States Attorney
Telephone: (340) 774-5757
Facsimilie: (340) 776-3474
5500 Veterans Drive, Suite 260
St. Thomas, Virgin Islands 00802-6424
David.White6@usdoj.gov

# CERTIFICATE OF COMPLIANCE

I certify that I am an Assistant United States Attorney for the District of the Virgin Islands and filing the attached Brief for the United States:

1.      This brief complies with the length limitations of Fed. R. App. P. 32(a)(7):
       [  ]    this brief does not exceed 30 pages in length,

       [ X ]   this brief contains  9073 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and thus does not exceed the 14,000-word limit, or

       [  ]    this brief uses a monospaced typeface and contains {  } lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), and thus does not exceed the 1,300-line limit.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared using Microsoft Word 2010 word-processing system and:

       [X]     it is in a proportionally-spaced typeface, namely Times New Roman, that is at least 14 point, or

       [  ]    it is in a monospaced typeface, namely Courier New 12, having no more than 10 ½ characters per inch.

3.      The text of the electronic PDF brief is identical to the text of the paper copies of the brief.  The electronic PDF brief has been automatically scanned upon e-mail transmission by a virus detection program, namely a continuously-updated version of Trend Micro OfficeScan Client, and no virus was detected.

Dated: November 3, 2016              /s/David White
                                     David White
                                     Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Omodare Jupiter
1115 Strand Street
Second Floor
Christiansted, St. Croix, VI 00820
Counsel for Appellant


DATED:  November 3, 2016          */s/*David White_____
                                  David White
                                  Assistant United States Attorney